923 A.2d 1155

**Anthony BURGER, Appellant,**

**v.**

**SCHOOL BOARD OF the McGUFFEY School District, Appellee.**

Supreme Court of Pennsylvania.

Argued March 2, 2006.

Resubmitted April 13, 2007.

Decided May 31, 2007.

Brian David Cox, Pittsburgh, Woomer & Hall LLP, for Anthony Burger.

Donna S. Weldon, Keefer Wood Allen & Rahal, L.L.P., Harrisburg, for Pennsylvania Association of School Administrators.

Paul N. Lalley, Levin Legal Group, Huntingdon Valley, for McGuffey School District School Board.

Ernest N. Helling, Harrisburg, for Pennsylvania Department of Education.

Before: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN, FITZGERALD, JJ.

## *OPINION*

Justice CASTILLE.

This matter is before this Court on direct appeal because the trial judge found that Section 10–1080 of the Public School Code, 24 P.S. § 10–1080, was in unconstitutional conflict with Article VI, Section 7 of the Pennsylvania Constitution. Ac-

cordingly, the court determined that it lacked subject matter jurisdiction over appellant's Section 10–1080–based challenge to appellee School Board's termination of appellant as superintendent of the McGuffey School District.[1] For the reasons that follow, we find that Section 10–1080 is constitutional, and accordingly, we reverse and remand to the trial court for proceedings consistent with this Opinion.

The facts are not in dispute: On June 29, 1998, appellant, Anthony Burger, was appointed to a five-year term as superintendent of the McGuffey School District, and the parties entered into a written agreement setting forth salary and benefits for appellant's services. During this term, Sheryl Fleck, a McGuffey School District administrator, filed a complaint alleging sexual harassment and sexual discrimination against her by appellant. The School Board retained Bruce Campbell, Esquire, to investigate the charges. Based upon his investigation, Attorney Campbell held a hearing on October 26, 2000, in accordance with the due process requirements of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).[2] Appellant appeared at the hearing represented by counsel and, the trial court determined, "had sufficient opportunity to respond to the charges presented against him." Tr. Ct. Op. at 2.

On November 2, 2000, the School Board unanimously promulgated Resolution No. 00–01–01, which: (1) directed that a hearing be held on Fleck's charges; (2) authorized Attorney Campbell to conduct the hearing; (3) authorized Michael I. Levin, Esquire, or substitute counsel to act as the hearing officer, make procedural and evidentiary rulings and provide legal advice; and (4) suspended appellant without pay or

1. Jurisdiction arises under 42 Pa.C.S. § 722(7), which provides that this Court has exclusive jurisdiction of appeals from final orders of the courts of common pleas holding a statute to be unconstitutional.

2. The *Loudermill* Court found that a tenured public employee has certain due process rights arising out of the employee's property right in his position. Prior to being terminated from the position, the employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 (citations omitted).

benefits pending the hearing process.[3]  A hearing was initially scheduled for December 6, 2000, but postponed at appellant's request.  The School Board addressed procedural matters at its December 6, 2000 meeting, with appellant's counsel participating via telephone.  The hearing was rescheduled for December 14, 2000, but again was postponed at appellant's request.  After the hearing was rescheduled for December 19, 2000, appellant sought a third postponement, citing medical reasons.  Because appellant failed to provide any evidence of his need for the third postponement, the December 19, 2000 hearing went forward, and Attorney Campbell presented documents and testimony in support of the charges against appellant to the hearing officer, E.J. Strassburger, Esquire.[4]  Neither appellant nor his counsel, both of whom had received proper notice, attended the hearing.

On January 10, 2001, the School Board held a public meeting at which it unanimously voted to discharge appellant and adopted Resolution No. 00/01–03, which approved findings of facts and conclusions of law presented by Attorney Campbell.  On February 9, 2001, appellant filed a timely appeal pursuant to the Local Agency Law. He also filed a separate civil action in the Court of Common Pleas of Washington County on March 7, 2001.  The School Board filed preliminary objections in the nature of a demurrer, arguing that appellant's sole remedy was an appeal pursuant to the Local Agency Law. On November 29, 2001, the Honorable David L. Gilmore entered an order finding that appellant was barred from pursuing his Common Pleas Court action until he exhausted all administrative remedies available under the Local Agency Law.

**3.**  This Court previously ruled upon the propriety of appellant's suspension without pay and held that "a school board may implement interim suspensions with or without pay in appropriate circumstances in the face of allegations of serious misconduct on the part of a superintendent," so long as "procedural due process rights are observed when implementing such measures."  *Burger v. Board of School Directors of McGuffey School Dist.*, 576 Pa. 574, 839 A.2d 1055, 1062 (2003).

**4.**  The trial court states that the evidence was presented to Attorney Levin acting as hearing officer, but the transcript of the proceedings indicates that Attorney Strassburger served as the hearing officer.

On March 1, 2004, appellant requested a *de novo* hearing in the Court of Common Pleas, which the court granted on April 28, 2004.[5] On September 8, 2004, the School Board filed a motion to dismiss for lack of subject matter jurisdiction, citing Article VI, Section 7 of the Pennsylvania Constitution, which provides that:

> All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed. All civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

The Board claimed that Resolution No. 00/01–03 was entered pursuant to its constitutional authority under Article VI, Section 7 as the appointing agency to remove a civil officer at the Board's pleasure. Appellant countered that, pursuant to Section 10–1080 of the Public School Code, a superintendent may only be removed after a hearing and for certain enumerated causes:

> District superintendents and assistant district superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

24 P.S. § 10–1080. The Board responded that any rights appellant claimed to derive from Section 10–080 represented an unconstitutional restriction on the Board's authority under Article VI, Section 7. The issue was thus squarely joined.

5. The record before this Court is silent as to the events that transpired between November 29, 2001 and March 1, 2004.

Following oral argument on November 3, 2004, the trial court granted the Board's motion to dismiss. The court found that appellant was a "civil officer" who was "appointed" to office within the meaning of Article VI, Section 7 and that the School Board was the power by which appellant was appointed. The court further found that Section 10–1080 conflicted with Article VI, Section 7, that the constitutional provision controlled, and therefore that "[a]ny purported limitation on that removal power espoused in § 10–1080 of the Public School Code of 1949 constitutes an unconstitutional limitation on the School Board's removal power." Tr. Ct. Op. at 7 (citing *South Newton Tp. Electors v. South Newton Tp. Supervisor*, 575 Pa. 670, 838 A.2d 643 (2003)). The court further found that the power constitutionally vested in a locally elected body to remove its civil officers at its pleasure left no possibility of judicial review, and therefore, the court lacked subject matter jurisdiction to entertain appellant's action. Accordingly, the trial court granted the School Board's motion to dismiss, stating that the Board had the absolute right, pursuant to Article VI, Section 7, to remove appellant from his position as superintendent.

Appellant appealed to the Commonwealth Court. The School Board filed a petition to remove the matter to this Court pursuant to 42 Pa.C.S. § 722(7), and on March 30, 2005, this Court noted probable jurisdiction. Since the order below held that Section 10–1080 was unconstitutional, our direct review of it is secure. *See supra* n. 1.

Appellant presents two issues for review: (1) whether the trial court properly concluded that Section 10–1080 of the Public School Code of 1949 is unconstitutional because Article VI, Section 7 of the Pennsylvania Constitution grants an elected school board exclusive authority to remove its appointed superintendent at its pleasure; and (2) whether appellant had a property right arising out of his legitimate expectation of continued employment. The first issue involves the constitutionality of a statutory enactment. A challenge to the constitutionality of legislation poses a question of law, and thus, our review is plenary and non-deferential. *Pennsylva-*

*nia Turnpike Commission v. Commonwealth,* 587 Pa. 347, 899 A.2d 1085, 1094 (2006), citing *Harrisburg School District v. Zogby,* 574 Pa. 121, 828 A.2d 1079, 1088 (2003); *Purple Orchid, Inc. v. Pa. State Police,* 572 Pa. 171, 813 A.2d 801, 805 (2002); *Pennsylvania Sch. Bds. Ass'n v. Commonwealth Ass'n of Sch. Adm'rs, Teamsters Local 502,* 569 Pa. 436, 805 A.2d 476, 479 (2002). We follow the presumption that legislation duly enacted by the General Assembly and signed into law by the Governor is valid; accordingly, we will not declare a statute unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Id.,* citing *Commonwealth v. Mockaitis,* 575 Pa. 5, 834 A.2d 488, 497 (2003); *Purple Orchid,* 813 A.2d at 805; *Commonwealth v. Cotto,* 562 Pa. 32, 753 A.2d 217, 219 (2000). *See also* 1 Pa.C.S. § 1922(3). The party challenging the constitutionality of a statute bears a heavy burden of persuasion. *Id.,* citing *Zogby,* 828 A.2d at 1087–88; *Commonwealth, Dept. of Transp. v. McCafferty,* 563 Pa. 146, 758 A.2d 1155, 1160 (2000).

Appellant argues that the trial court's determination that Section 10–1080 conflicts with Article VI, Section 7 is in error. Citing *Weiss v. Ziegler,* 327 Pa. 100, 193 A. 642 (1937), appellant contends that this Court must read the constitutional provision in combination with Section 10–1080 and conclude that, because the position of school superintendent itself is one created by an Act of the General Assembly, the legislature may also provide conditions for the removal of a superintendent. Appellant distinguishes on factual bases the cases the trial court relied upon in concluding that appellant was removable at the School Board's pleasure. *See South Newton Tp. Electors,* 575 Pa. 670, 838 A.2d 643 (removal of township supervisor, who was elected rather than appointed); *Buell v. Union Tp. School Dist.,* 395 Pa. 567, 150 A.2d 852 (1959) (removal of officers of school board whose removal was governed by distinct section of School Code); *Suermann v. Hadley,* 327 Pa. 190, 193 A. 645 (1937) (legislative enactment set up new system of operation thereby abolishing offices existing under old system). The position of superintendent, appellant argues, is distinct from that of township supervisor

or school board officer. In appellant's view, the superintendent is unique even among school officials in that he neither has tenure nor is protected by collective bargaining. Thus, in appellant's view, establishment of a mechanism under Section 10–1080 for removal was intended to provide some measure of job security to a school superintendent, a position which is an office of legislative creation.

The School Board responds that the trial court properly concluded that Section 10–1080 conflicts with Article VI, Section 7 because it purports to limit what is in fact the Board's unfettered constitutional authority to remove a superintendent at its pleasure. The Board notes that Section 10–1080 provides that a school board may only remove an appointed superintendent for "neglect of duty, incompetency, intemperance, or immorality." That restriction is contrary to the general and unrestricted power plainly granted by Article VI, Section 7 to remove a superintendent, like any other appointed civil officer, for any reason deemed appropriate by the appointing authority. The Board further contends that the decision of a school board to fire a superintendent involves the exercise of an essential governmental function constitutionally conferred upon a school board.

The Pennsylvania Association of School Administrators ("PASA") as *amicus curiae* has filed a brief directing this Court's attention to the School Code's comprehensive statutory scheme relating to school superintendents. *See, e.g.,* 24 P.S. 10–1073 (relating to length of term and automatic renewal if school board fails to notify superintendent of non-renewal within 150 days of expiration of his term); 24 P.S. 10–1078 (requiring that superintendents be commissioned by Secretary of Education); 24 P.S. 10–1081 (setting forth duties of superintendent). As part of this scheme, PASA submits, the General Assembly logically provided for conditions addressing the removal of superintendents. According to PASA, the statutory scheme reveals a legislative intention to prevent the removal of a superintendent absent due process and proof of specific misconduct. PASA further posits that the limited job security thus statutorily provided to school superintendents is designed

to allow a superintendent to act as a source of independent professional advice to the school board. PASA notes that school superintendents are charged with monitoring academic programs to insure that state requirements are met and to report deficiencies to the school board and then ultimately to the Superintendent of Public Instruction if the deficiencies are not corrected. As a consequence of these duties, the superintendent is always in a position of potential conflict with the school board. In such a construct, it is essential to maintain the independence of superintendents; and, in PASA's view, the limited job security provided by Section 10–1080 grants superintendents the independence needed to perform their **statutory** duties without fear of reprisal.

A jurisdictional challenge is typically a threshold question, with review of the substantive issues following a jurisdictional question only if the court is found to possess jurisdiction. *MCI WorldCom, Inc. v. Pennsylvania Public Utility Com'n*, 577 Pa. 294, 844 A.2d 1239, 1249 (2004) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."), citing *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868)). Here, however, the question of the trial court's jurisdiction over this matter is inextricably intertwined with the substantive issue of the constitutionality of Section 10–1080.

The constitutional issue involves a straightforward challenge to the statutory language. The trial court focused on that part of the constitutional provision stating that, "Appointed civil officers, other than judges of the courts of record, may be removed **at the pleasure of the power** by which they shall have been appointed" (emphasis added). There is no dispute that appellant was a civil officer appointed by the School Board.[6] The trial court found that the constitutional grant of

6. In his Concurring Opinion, Mr. Justice Saylor proposes that appellant was not a civil officer within the meaning of Article VI, Section 7 because he was not a statewide officer. *See* Concurring Op., at 213–14,

authority conferred upon the appointing power to remove an appointed civil officer by the above sentence is absolute, thereby permitting no limitations on that authority. Section 10–1080, on the other hand, explicitly provides that superintendents and assistant superintendents may only be removed after a hearing, a specific type of notice, and only for neglect of duty, incompetency, intemperance or immorality. The trial court thus concluded that Section 10–1080 is unconstitutional because it places limitations on the otherwise absolute authority of the School Board to remove a superintendent, such as appellant, from office.

██ The initial difficulty with the trial court's analysis and conclusion is that the very first sentence of Article VI, Section 7 reads: "All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime." The Section goes on to distinguish

923 A.2d at 1167 (contending that "state-level officials were almost exclusively in view when [the precursor to Article VI, Section 7] was framed" in 1873). Although he acknowledges that this Court applied Article VI, Section 7 to local officers as recently as *South Newton Township Electors, supra,* and *In re Petition to Recall Reese,* 542 Pa. 114, 665 A.2d 1162 (1995), Justice Saylor would distinguish those decisions by noting that "it is not clear that those decisions took into account the Commonwealth-official versus local-official distinction." Op. at 213, 923 A.2d at 1167; *see also Allegheny Inst. Taxpayers Coalition v. Allegheny Regional Asset Dist.,* 556 Pa. 102, 727 A.2d 113, 118 (1999) (applying Article VI, Section 7 to board members of the Allegheny Regional Asset District). While Justice Saylor's novel theory is cogent, it is not one raised by the parties.

Aside from its absence from the parties' briefs and arguments, the theory raised by Justice Saylor is in at least facial tension with prior decisions of this Court. *See, e.g., Commonwealth ex rel. Schofield v. Lindsay,* 330 Pa. 120, 198 A. 635 (1938) (quoting *In re Georges Twp. Sch. Dirs.,* 286 Pa. 129, 133 A. 223, 225 (1926) for the proposition that, "in so far as appointive officers are concerned, there is the right, under ... article 6, section 4, of the Constitution, on the part of the one selecting, to remove at his own pleasure ... and this applies not only to officers designated by the Governor, but to those permitted by the Legislature to make the appointment in question, whether the employment be by the state, a county, or municipality"); *accord Finley v. McNair,* 317 Pa. 278, 176 A. 10, 11 & n. 1 (1935) (including an assistant county superintendent of schools as one among those "held to be officers" in prior cases). Regardless of the viability of the theory, however, we leave its consideration for a future case that squarely presents the issue before us.

between appointed civil officers, who may be removed "at the pleasure of the power by which they shall have been appointed," and elected civil officers, who may be removed "by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate." The plain language of the first sentence of Section 7, with the use of the phrase "All civil officers," makes clear that it applies to both appointed and elected civil officers. The provision that such civil officers **shall** hold their offices on the condition that they "behave themselves well while in office," and that they **shall** (not may) be removed "on conviction of misbehavior in office or of any infamous crime" contemplates an affirmative limitation (good behavior) upon removal. Thus, the authority to remove such officers cannot be said to be absolute. Moreover, that the power of removal is not unlimited is a matter of common sense, since none could seriously dispute that an officer cannot be removed for an unconstitutional reason, such as a decision premised upon the race or gender of the officer. We therefore hold that, as a matter of plain meaning, the Constitution does not vest in the appointing power unfettered discretion to remove. Instead, valid removal depends upon the officer behaving in a manner not befitting the trust placed in him by the appointing authority.[7]

Having determined that the constitutional provision, on its face, does not confer absolute removal authority upon the appointing power, we next must consider whether the General Assembly may place conditions or limitations on the appoint-

7. In his concurrence, Justice Saylor expresses his concern that our interpretation of Article VI, Section 7 would permit the General Assembly to enact statutes similar to Section 10–1080 that would constrain the Governor's power to remove legislatively authorized statewide officials because "there is no apparent principled basis to support a different construction as to the Governor or any other state-level appointing authority." Op. at 213, 923 A.2d at 1166. Without briefing or argument on the issue of whether a statute constraining the Governor's removal powers relative to such officers would violate Article VI, Section 7, however, we cannot assume that we would reach the same result in such a case. Consequently, and in the absence of such a statute, we leave for the appropriate day the concurrence's speculation as to the constitutionality of a statute constraining the Governor's power to remove such statewide officials.

ing power's authority and, if so, whether the conditions contained in Section 10–1080 pass constitutional muster. So long as the statutory limitations concern matters bearing on the officers' "behaving themselves well while in office," we see no constitutional restriction upon the legislative prerogative. Moreover, the limitations in Section 10–1080 square with the constitutional command. Section 10–1080 has both a procedural and a substantive dimension. The substantive limitations—conditioning removal upon proof of neglect of duty, incompetency, intemperance or immorality—are all related to the officer's behavior while in office. Thus, we see no tension between the substantive limitation and the constitutional provision. The procedural aspects of the statute, envisioning basic notice and a hearing, likewise are not in conflict with the constitutional provision, as these guarantees simply provide a mechanism to ensure that a meaningful constitutional process occurs. Accordingly, we hold that Section 10–1080 survives constitutional muster.

The second difficulty with the trial court's finding of unconstitutionality is that it cannot be squared with the *Weiss v. Ziegler*, 327 Pa. 100, 193 A. 642, line of cases upon which appellant relies. The material facts in *Weiss* are similar to the facts in the case *sub judice*. The School Board for the Bethlehem School District reappointed William Weiss as superintendent for a term of four years, beginning in July of 1934. In December of 1935, however, charges were filed against Weiss that subsequently resulted in the school board's decision to remove him from office. Weiss sought injunctive relief prohibiting the removal. The trial court recognized that, pursuant to Section 1061 of the then-applicable School Code, 24 P.S. 1061, a superintendent could only be removed "after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality," and that the evidence did not justify Weiss's removal from office under that standard. The trial court nevertheless dismissed Weiss's bill for injunctive relief because then-Article VI, Section 4 of the Pennsylvania Constitution—the materially-identical predecessor of Article

VI, Section 7—provided that an appointed civil officer may be removed at the pleasure of the appointing power.[8]

On appeal, this Court dismissed Weiss's equity action for lack of jurisdiction, but nevertheless went on to address whether the authority of the appointing power was absolute, ultimately finding that the lower court had erred in its application of the constitutional provision.[9] The *Weiss* Court noted that the constitutional power of removal must be read in conjunction with other constitutional provisions, a reading which makes clear that the General Assembly may enact limitations on the constitutionally conferred power to remove a civil officer at least where the office at issue was created by the General Assembly:

> Article 6, section 4, provides three methods of removing officers: (1) On "conviction of misbehavior in office or of any infamous crime"; (2) "at the pleasure of the" appointing power; (3) removal "by the Governor" as specified. But that provision must be read in connection with other provisions in the Constitution. Article 12, section 1, provides: "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law." **The authority so conferred to provide for the election or appointment of other officers necessarily involves and implies legislative power to annex conditions of tenure.** The Legislature may very well say that it is desirable that certain officers should be appointed but, for reasons which it deems sufficient, they should not be subjected to removal at pleasure and, if so minded, the Legislature may of course provide for such officers, the Constitution containing no provision to the contrary.

*Weiss*, 193 A. at 644 (emphasis supplied). Article XII, Section 1, referred to in *Weiss*, now appears verbatim at Article VI,

---

**8.** Article VI, Section 4, has since been renumbered Article VI, Section 7, the word "civil" was inserted each time it appears, and minor deletions not pertinent here were made.

**9.** The *Weiss* Court passed upon the merits notwithstanding its dismissal of Weiss's equity action "so that there may be no doubt on the subject if, hereafter, [Weiss] sues in assumpsit to recover his salary." 193 A. at 644.

Section 1 of the 1968 Pennsylvania Constitution. Thus, the *Weiss* analysis remains relevant.

Since *Weiss*, this Court has consistently recognized that, when the General Assembly creates a public office, it may impose terms and limitations on the removal of the public officer so created.

> It is therefore established in this State beyond respectable controversy that, where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit. There is nothing in the Constitution prohibiting such action while, on the other hand, Article XII, Section 1, expressly admits of it. Of course, where the legislature, in creating a public office, imposes no terms or limitations on the duration of an incumbent's tenure or the mode of his removal, the method of removal prescribed by Article VI, Section 4, of the Constitution applies.

*Watson v. Pennsylvania Turnpike Commission*, 386 Pa. 117, 125 A.2d 354, 356–57 (1956) (citations omitted) (holding that Governor lacked power to remove member of Turnpike Commission at his pleasure during statutorily prescribed term of office). *See also Bowers v. Pennsylvania Labor Relations Bd.*, 402 Pa. 542, 167 A.2d 480 (1961) (Governor could not remove member of Labor Relations Board who was appointed for statutorily fixed tenure); *Commonwealth ex rel. Hanson v. Reitz*, 403 Pa. 434, 170 A.2d 111 (1961) (per curiam order relying on *Watson* and finding mayor lacked authority to remove statutorily created member of Urban Redevelopment Authority); *Commonwealth ex rel. Sortino v. Singley*, 481 Pa. 367, 392 A.2d 1337 (1978) (mayor cannot remove members of Redevelopment Authority at his pleasure during their terms of office).

It is undisputed that the office of school superintendent is not expressly provided for in our Constitution; nor does the Constitution expressly prohibit the General Assembly from enacting provisions relating to school superintendents. The office is a statutory creation and, as such, Article VI, Section 1 authorizes the General Assembly to enact provisions

governing appointment and removal. Section 10–1080, therefore, plainly is constitutional. Moreover, as PASA's amicus brief helpfully explains, the reasons why the General Assembly would wish to establish a modicum of job security for this particular office are readily apparent, given the potential for conflict between superintendents and their school boards.[10]

Having found that Section 10–1080 is constitutional, the jurisdictional question answers itself. Even if it is assumed that an exclusive constitutional power vested in an appointing authority may operate to remove jurisdiction over a removal challenge, we hold that the appointing authority's power in the case *sub judice* is not absolute and a statutory challenge to the removal may be forwarded under Section 10–1080. The trial court plainly has jurisdiction to entertain such a challenge and will do so upon remand.

Appellant's second issue, *i.e.*, whether he has a property right in continuing employment as a school superintendent, is ancillary to the constitutional issue which vested jurisdiction in this Court. As such, appellant is not entitled to consideration of the issue as a matter of right. In *Harrington v. Commonwealth, Dept. of Transportation, Bureau of Driver Licensing*, 563 Pa. 565, 763 A.2d 386 (2000), this Court directed that, where a litigant pursuing a direct appeal under 42 Pa.C.S. § 722(7) wishes to raise such ancillary issues, he must argue and develop reasons why such issues should be ad-

10. We respectfully disagree with the suggestion in Mr. Justice Eakin's Dissenting Opinion that *Buell v. Union Tp. School Dist.*, 395 Pa. 567, 150 A.2d 852 (1959), requires or supports a different result. The very brief opinion in *Buell* merely restates prior holdings that school district treasurers are "public officers" and concludes that school district secretaries qualify as public officers because of the duties they perform. It is not clear from the opinion whether either school district treasurers or secretaries were subject to a comprehensive statutory scheme like that pertaining to school superintendents. *See, e.g.*, 24 P.S. 10–1073; 24 P.S. 10–1078; 24 P.S. 10–1081. In any event, the *Buell* decision does not address whether there was a specific statute in place protecting school district treasurers or secretaries, as opposed to the general protection of officers cited by the dissent, or whether the offices were statutorily-created positions. Finally, we reiterate that our approach is consistent with the line of cases beginning with *Weiss v. Ziegler*, 327 Pa. 100, 193 A. 642 (1937).

dressed by this Court, in the first instance, rather than remanded to the lower court or intermediate appellate court:

> [H]enceforth, to the extent that litigants seek review of ancillary and/or previously undecided issues in a direct appeal pursuant to Section 722(7), they are directed to develop reasons why such issues should be specially considered, along the lines of the guidelines stated in Pennsylvania Rule of Appellate Procedure 1114. In the absence of such reasons, the general practice of the Court will be to remand to the common pleas court, or, where appropriate, transfer to the appropriate intermediate appellate court, for consideration of ancillary or unresolved issues. *See generally Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 98, 515 A.2d 1358, 1370–71 (1986). (footnote omitted).

*Id.* at 393. In a footnote, the *Harrington* Court added that, "[t]his approach does not alter an appellant's obligations related to issue preservation and waiver." *Id.* at 393 n. 9.

Appellant has not cited to *Harrington* nor has he set forth any special or important reason why this Court should entertain his ancillary issue in this direct appeal under Section 722(7). It appears that the trial court addressed this issue and determined that appellant did not have a property right in his position as superintendent, and indeed, cited that as a factor upon which the court based its erroneous conclusion that Section 10–1080 is unconstitutional. However, because appellant has failed to attempt to comply with *Harrington,* and articulates no special or important reason why we should entertain this ancillary issue, we will not entertain it. Indeed, consideration would be particularly inappropriate since the trial court has yet to consider the merits of appellant's Section 10–1080 claim. Upon resolution of the Section 10–1080 claim on remand, should appellant deem himself aggrieved, he may pursue his ancillary claim in an appeal in the ordinary course to the Commonwealth Court.

Reversed and remanded.

Justice BAER, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CAPPY joins.

Justice SAYLOR, Concurring.

I join the outcome reached by the majority, but on a different basis. As I read the first sentence of Article VI, Section 7, it appears that "good behavior" is a necessary condition of maintaining office, but not a sufficient one. Thus, it should not be understood to limit the at-pleasure removal power set forth in the second sentence. Therefore, I agree with Mr. Justice Eakin that the majority's interpretation appears to render the second sentence of questionable significance. *See* Dissenting Opinion, at 215–16, 923 A.2d at 1168 (Eakin, J.). Indeed, the insertion of this sentence into Article VI, Section 4 of the Constitution of 1874 (from which the present Section 7 was derived almost verbatim) was debated at length, and the delegates who spoke in favor of it expressed their intent that it should preclude the imposition of any delay or procedural safeguards relative to an appointing authority's ability to expeditiously remove an appointed official that was dishonest or otherwise unfit for office. They reasoned that the public interest required prompt removal powers without the invocation of potentially time-consuming procedural safeguards, and that this outweighed any potential harm occasioned by possible misuse of the removal power. *See, e.g.,* Debates of the Constitutional Convention of 1873, Vol. VII at 561 (remarks of Mr. Littleton); *id.,* Vol. VIII at 124 (remarks of Mr. White); *Id.* at 124–25 (remarks of Mr. Biddle). Others, who sought to amend the provision to permit procedural safeguards, were not successful in their efforts. *See, e.g., id.,* Vol. V at 374 (remarks of Sen. Buckalew); *id.,* Vol. VII at 560–61; *Bowers v. Pennsylvania Labor Relations Bd.,* 402 Pa. 542, 562 n. 5, 167 A.2d 480, 489 n. 5 (1961) (Jones, J., dissenting).[1]

1. In a parallel development, some delegates urged caution in the removal of elected officials, preferring to require impeachment instead of solely the "address of two-thirds of the Senate." That suggestion was defeated as well, with one delegate who opposed the impeachment requirement explaining:

In this regard, I am concerned that the majority's interpretation may have the unintended consequence of permitting the General Assembly to impose similar "affirmative limitations," Majority Opinion, at 206, 923 A.2d at 1162, upon the Governor's at-will removal powers relative to statewide officials, particularly those who are not appointed for a fixed term. If indeed Section 7 affirmatively permits the General Assembly to limit a school board's removal powers in the manner stated, there is no apparent principled basis to support a different construction as to the Governor or any other state-level appointing authority. In my view, permitting the Governor to be constrained in this manner would be contrary to the intent of the framers and the plain language of Article VI, Section 7.

Ultimately, however, I am able to join the result because I do not believe that Article VI, Section 7 was intended to apply to school district superintendents. Here again the debates are informative because they reveal that state-level officials were almost exclusively in view when then-Section 4 of Article VI was framed; little attention was paid to the concept of local appointing powers and the manner in which their removal powers should or should not be constrained. I recognize that this Court has previously applied Article VI, Section 7 to some classes of local officials, *see, e.g., South Newton Township Electors v. South Newton Township Supervisors,* 575 Pa. 670, 838 A.2d 643 (2003) (applying the provision to a township supervisor); *In re Petition to Recall Reese,* 542 Pa. 114, 665 A.2d 1162 (1995) (same as to the mayor of a home-rule municipality), but it is not clear that those decisions took into account the Commonwealth-official versus local-official distinction. Because the present Constitution expressly authorizes

Take for instance your office of State Treasurer, who will be elected by the people. Immediately upon his election he may be discovered to be totally unfit for the office, or he may have designs upon the treasury, by the removal of its funds, and for which his security may be inadequate or insufficient as a remedy, and it may be important that he should be removed, and promptly[.] ... The safety of the public interest may require prompt action. We are bound to suppose that extreme cases may arise.

DEBATES OF THE CONSTITUTIONAL CONVENTION OF 1873, Volume III, at 231 (remarks of Mr. Darlington).

the General Assembly to legislate in the arenas of local government and education, *see* PA. CONST. art. III, § 14 (pertaining to a system of public education); *id.,* art. IX (pertaining to local government), it appears most likely to me that the framers did not intend the general at-pleasure removal power contained in Article VI, Section 7 to constrain the General Assembly in its formulation of regulations concerning the hiring and firing school district superintendents.[2] It is on this basis that I would reject the School District's constitutional challenge to Section 1080 of the Public School Code, 24 P.S. § 10–1080.

Justice EAKIN, Dissenting.

I dissent from the majority's conclusion that 24 P.S. § 10–1080 is not an unconstitutional restriction on the school board's removal authority under Article VI, § 7 of the Pennsylvania Constitution.

Although the Public School Code is comprehensive, and the legislature may have intended to prevent removal of a school superintendent absent due process and specific misconduct by the superintendent, the effect of § 10–1080 is to impose a limitation on a constitutionally created power. The majority relies on the fact the position of superintendent is created by statute, and Article VI, § 1 authorizes the legislature to enact provisions governing appointment and removal. *See* Majority Op., at 209–10, 923 A.2d at 1164; *but see Suermann v. Hadley,* 327 Pa. 190, 193 A. 645, 651 (1937) (removal power granted by Article VI, § 4, precursor to Article VI, § 7, is exclusive and applies to any public office, whether state or municipal, appointed under Constitution or under legislative authority). However, although the board is also created by statute, its

2. I am aware that, in *Weiss v. Ziegler,* 327 Pa. 100, 103–05, 193 A. 642, 644–45 (1937), this Court suggested that the prior Article VI, Section 7 could apply to school district superintendents. *See generally* Majority Opinion, at 207–08, 923 A.2d at 1163 (analyzing *Weiss* ). Notably, however, the relevant portion of *Weiss* was dicta and, moreover, it relied upon *In re Supervisors of Milford Township,* 291 Pa. 46, 139 A. 623 (1927), which has since been overruled. *See Reese,* 542 Pa. at 124, 665 A.2d at 1167; *see also South Newton Township Electors,* 575 Pa. at 675, 838 A.2d at 646 (recognizing the overruling of *Milford Township* ).

removal power is conferred by the Constitution; therefore, any conflicting statutory provisions may not stand. *See In re Petition to Recall Reese*, 542 Pa. 114, 665 A.2d 1162, 1164 (1995) (legislation's presumption of constitutionality can be rebutted where statute clearly, palpably, and plainly violates Constitution).

Turning to the language of Article VI, § 7, the majority reads the phrases "behave themselves well while in office" and "on conviction of misbehavior in office or of any infamous crime" as imposing an affirmative limitation on the board's removal power, *i.e.*, the board may only exercise its removal power if the superintendent "misbehaves." *See* Majority Op., at 206, 923 A.2d at 1162. However, I interpret this language not as a restriction upon the board's removal power, but rather as merely a condition imposed upon the appointee, who will certainly be removed for misconduct while in office. In addition to being removed for misbehavior while in office, the appointee may also be removed at the sole discretion of the board. Article VI, § 7 provides the appointing authority (the board) may remove the appointed authority (the superintendent) at its pleasure; to read circumstantial limitations into this broad grant of removal power is to eviscerate the constitutional grant of authority. The majority's interpretation nullifies the meaning of "at the pleasure of the [appointing] power," Pa. Const. art. VI, § 7, and permits the legislature to qualify the Constitution's absolute grant of removal power.[1]

This Court's decision in *Buell v. Union Township School District*, 395 Pa. 567, 150 A.2d 852 (1959), is analogous. There, we held a school district's secretary and treasurer were "appointed officers" within the meaning of Article VI, § 4 of the Constitution,[2] which provided: "Appointed officers, other than judges of the courts of record and the Superintendent of

---

1. The majority opines "an officer cannot be removed for an unconstitutional reason, such as a decision premised upon the race or gender of the officer." Majority Op., at 206, 923 A.2d at 1162. Such reasoning not only dilutes the meaning of the phrase "at the pleasure of," but also suggests an issue which is not before us.

2. The text of Article VI, § 7 is similar to that of original Article VI, § 4, as it read in 1874; Article VI, § 4 was renumbered in 1966 as present Article VI, § 7.

Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed." *Buell*, at 854 (quoting Pa. Const. art. VI, § 4). Therefore, these officers were removable at the pleasure of the board, and we held the following provision of the School Code of 1949 was unconstitutional:

> The board of school directors in any school district, . . . shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers . . . for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

*Id.* (quoting Act of March 10, 1949, P.L. 30, art. V, § 514, 24 P.S. § 5–514).

Here, the constitutional provision and legislative enactment are nearly identical to those in *Buell*. Tellingly, the language exempting the "Superintendent of Public Instruction" from the appointing power's absolute removal authority has been excised from the current constitutional provision. I would hold, as in *Buell*, that the School Code provision at issue conflicts with the constitutional grant of unfettered discretion to the board and is thus invalid. Any other reading gives no meaning to the constitutional provision and eliminates a statutory scheme.

Accordingly, I would affirm, holding § 10–1080 unconstitutionally restricts the board's removal power under Article VI, § 7, and the trial court lacked jurisdiction to review the board's exercise of this power. Therefore, I respectfully dissent. I join the majority's disposition regarding consideration of appellant's ancillary issue.

Chief Justice CAPPY joins this opinion.