[J-93-2017][M.O. -   Wecht, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| DR. SUSAN KEGERISE, | : | No. 22 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court dated 9/13/16, |
| | : | reconsideration denied 11/9/16, at No. |
| | : | 232 CD 2015 affirming the order of the |
| v. | : | Court of Common Pleas of Dauphin |
| | : | County, Civil Division, dated 11/5/14 at |
| KATHY L. DELGRANDE, JOHN F. | : | No. 2014-CV-3793-CV |
| DIETRICH, CLIFTON D. EDWARDS, | : | |
| CAROL L. KARL, JESSE RAWLS, SR., | : | |
| DR. PETER J. SAKOL, HELEN D. | : | |
| SPENCE, AND MARK Y. SUSSMAN, IN | : | |
| THEIR OFFICIAL CAPACITY, | : | |
| | : | |
| Appellants | : | ARGUED:  November 29, 2017 |

## CONCURRING OPINION

**CHIEF JUSTICE SAYLOR**                                            **DECIDED:  April 26, 2018**

I agree with the majority that resignation is a necessary element of a constructive discharge claim, and that this conclusion undermines a material aspect of the Commonwealth Court's treatment.  As developed below, however, I have difficulty with some of the other lines of the majority's reasoning, and accordingly, I respectfully concur in the result.

Initially, I do not agree with the majority that the threshold issue, in assessing the availability of a mandamus remedy, is whether the Board was required to follow the procedure set forth in Section 1080 of the Public School Code.  Majority Opinion, *slip op.* at 10.  Such framing leads the majority to a line of reasoning centered upon whether

Section 1080 presents the exclusive avenue through which a contractual relationship between a school board and a superintendent may be concluded. *See, e.g.*, Majority Opinion, *slip op.* at 11-14. The relevant reasoning culminates in *reductio ad absurdum* in the form of the majority's assessment of whether Section 1080's removal procedure for "neglect of duty, incompetency, intemperance, or immorality," 24 P.S. §10-1080, should extend to any voluntary resignation by a superintendent. *See* Majority Opinion, *slip op.* at 14.

Dr. Kegerise, however, has never argued that Section 1080 is relevant to all forms of resignation. What she has argued is that the Legislature intended to restrict the circumstances under which a superintendent may be discharged and has provided an orderly procedure for termination in appropriate circumstances. *See Burger v. Sch. Bd. of McGuffey Sch. Dist.*, 592 Pa. 194, 210, 923 A.2d 1155, 1164 (2007) (explaining that this provision was enacted to "establish a modicum of job security for this particular office ... given the potential for conflict between superintendents and their school boards."). As I read Dr. Kegerise's brief, it is her position that a school board that creates a hostile and oppressive work environment, effectively forcing a resignation, circumvents the Legislature's manifest purposes in these regards. *See, e.g.*, Brief for Appellee at 18. In this more limited respect, I agree with Dr. Kegerise that Section 1080 bears relevance to constructive discharge scenarios.[1]

---

[1] Relatedly, the majority's treatment of negotiated contractual severance provisions is premised on the notion that the Commonwealth Court's opinion holds that any and all forms of separation (including an entirely voluntary resignation) are governed by Section 1080. *See* Majority Opinion, *slip op.* at 13. However, as with the arguments of Dr. Kegerise, I read the intermediate court's reasoning as being centered on constructive discharge scenarios (*i.e.*, illegally forced removals). Accordingly, while I agree with the majority that construing Section 1080 as foreclosing voluntary resignations absent recourse to the statutory removal procedure would yield an absurd result, *see id.* at 14, I submit that the statute should still be read as proscribing illegal forced removals. The (continued…)

There are a number of other conceptual difficulties complicating the Court's review in this case. In this vein, I close by noting that I have serious reservations about whether mandamus is an appropriate remedy in the wider range of constructive discharge scenarios, given that the factual circumstances are often greatly disputed and in light of the availability of other legal remedies. *See Kuren v. Luzerne County*, 637 Pa. 33, 92-93, 146 A.3d 715, 750-51 (2016) ("Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate or adequate remedy."); *see also supra* note 1. I also do not apprehend how Dr. Kegerise could succeed in securing reinstatement, by mandamus or otherwise, without proving her allegations concerning a hostile work environment and intolerable working conditions. Along these lines, I note that the common pleas court made no factual determination in this critical regard.

---

(…continued)

difficulty, to my mind, lies in the assessment of whether a constructive discharge has actually occurred in any discrete case.

In light of this difficulty, ultimately I do not support the position that a school board faced with constructive discharge allegations has no ability to accept the integral implication that there has been a resignation. Given that it is not often possible to assess the merits of constructive discharge claims from the outset of litigation, school boards faced with meritless claims would be placed in the untenable position of lacking the ability of securing a replacement superintendent. In light of the substantial public interest at stake -- and as long as the legal and/or equitable remedies available through litigation are adequate -- I agree with the School Board's position that it could treat the constructive discharge claim as embodying a resignation and accept it.