**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2559
_____

ANGEL PEREZ, JR.

v.

BOROUGH OF JOHNSONBURG; DAVID CUNEO

David Cuneo,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-18-cv-00180)
Magistrate Judge: Honorable Richard A. Lanzillo
_____

Argued April 18, 2023

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*

(Filed: July 21, 2023)

Patrick M. Carey
Marshall Dennehey Warner Coleman & Goggin
717 State Street
Suite 701
Erie, PA 16501

Carol A. VanderWoude [**Argued**]
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street
Suite 2300
Philadelphia, PA 19103
        *Counsel for Appellant*

Benjamin M. Kelly [**Argued**]
Joshua S. Licata
Chad Shannon
Friday & Cox
1405 McFarland Road
Pittsburgh, PA 15216
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


**HARDIMAN**, *Circuit Judge*.

Police officer David Cuneo appeals an order of the District Court denying in part his motion for summary judgment. As relevant here, the District Court held that Cuneo was not entitled to qualified immunity on Angel Perez's claim

for an unlawful seizure. Cuneo challenges that decision and we agree with him. So we will reverse that part of the District Court's order.

I

A

On the evening of November 20, 2017, Cuneo was the only officer on duty in the Borough of Johnsonburg, Pennsylvania. He began by checking the activities log that informs officers of developments since their last shift. The log showed that nearby St. Marys Police Department had notified Johnsonburg Police of a search warrant to obtain a DNA sample from Angel Perez. Cuneo knew Perez, a local with a history of illegal drug use who had recently sought Cuneo's advice about mental health and related issues. The log entry instructed officers who saw Perez to "hold" him and call St. Marys. App. 309.

From that log entry and a separate call with St. Marys, Cuneo knew that Perez was a suspect in the recent burglary of a drug house. Cuneo also knew that Perez's DNA had been found at the crime scene and that St. Marys wanted a DNA sample for confirmation. Cuneo inferred—mistakenly, it turned out—that a "body" warrant, not just a DNA warrant, also had issued for Perez. App. 241.

Around midnight, while sitting in his cruiser in a parking lot, Cuneo spotted Perez walking down the street. Cuneo pulled into the street, drove in the direction Perez was walking, and entered a parking lot on Perez's side of the road. He waited there as Perez, who recognized the car's Johnsonburg Police markings, approached. Cuneo got out and

3

greeted Perez, who reciprocated. The men stood on the sidewalk near the car, having at first what Cuneo dubs "minor chit chat" and Perez calls a "friendly conversation." App. 75, 121. All agree this exchange was nonconfrontational.

Things changed when Cuneo mentioned the DNA warrant and told Perez he needed to take him into custody. Perez denied any involvement in the burglary, objected that St. Marys already had his DNA, and said he was going home. He then turned and crossed the street—Cuneo says Perez "sprint r[a]n" while Perez said that he "jog[ged]" or "jotted." App. 197, 244. Cuneo pursued Perez.

The parties disagree about what happened next. Perez says he was tased from behind without warning. Cuneo says he warned Perez to stop before tasing him. Once tased, Perez fell forward to the ground, breaking his nose. Cuneo radioed for backup and emergency medical assistance. Perez recovered, and a physical altercation between the two men ensued. Cuneo repeatedly tased and struck Perez with his baton. The altercation ended when Cuneo shot Perez in the back.

B

Perez sued Cuneo and the Borough of Johnsonburg under 42 U.S.C. § 1983. He first brought Fourth and Fourteenth Amendment claims, but later conceded that the latter should be dismissed. The District Court construed his complaint to include Fourth Amendment claims alleging unreasonable seizure and excessive force.

The parties agreed to have a Magistrate Judge decide their case consistent with Rule 73 of the Federal Rules of Civil Procedure. Following discovery, Defendants moved for

4

summary judgment. Cuneo asserted qualified immunity in defense. The District Court, after oral argument, granted the motion in part and denied it in part. It granted judgment to the Borough on all claims, and granted judgment to Cuneo on the excessive force claim for his use of his taser and baton during the altercation with Perez. The Court denied Cuneo's motion as to his liability on the excessive force claim for the use of his firearm during the altercation. And it denied Cuneo's motion on the unlawful seizure claim, which led to this timely appeal.

II

Our review is de novo. *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010) (jurisdiction and summary judgment); *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (legal grounds underpinning qualified immunity). Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. The Magistrate Judge had jurisdiction under 28 U.S.C. § 636(c)(1). Cuneo claims we have jurisdiction under 28 U.S.C. § 1291, but Perez contests that point. So we turn first to that jurisdictional dispute.

A

Cuneo insists that his appeal is "narrow." Cuneo Br. 5. On his view, the appeal concerns only his "initial stop and interactions" with Perez—the conversation up until Perez turned away and crossed the street—and not the "physical altercation" that followed. *Id.* Cuneo claims matters beyond the "initial stop and interactions" are "irrelevant" to the appeal. *Id.*

5

Cuneo's attorney confirmed this understanding at oral argument. *See* Oral Arg. at 1:42–1:56 ("We're here with respect to only one of the claims, and the issue here as to that claim involves qualified immunity with respect to the initial interactions between Officer Cuneo and Mr. Perez."). Perez's brief focuses on the same timeframe. His "Summary of Argument" and "Argument" sections mention nothing that happened after Perez left the conversation. And Perez says he was unlawfully seized when Cuneo first mentioned the DNA warrant.

The District Court found that Cuneo's initial attempt to detain Perez, right "at the time Cuneo encountered" him, was unlawful. App. 22. Based on the parties' framing of the issue, the District Court assumed that Cuneo's initial encounter with Perez was either a *Terry* stop or an arrest—a seizure either way. *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018). So the Court focused on whether the assumed seizure was justified.

B

We have jurisdiction to hear "all final decisions" not directly appealable to the Supreme Court. 28 U.S.C. § 1291. Typically, a decision or order is "final" when it concludes litigation. *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999). But courts give § 1291 a "practical" construction, permitting interlocutory appeal of non-final orders that have a "final and irreparable effect" on the parties' rights. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949). These "collateral" orders are "conclusive," resolve "important questions separate from the merits," and are "effectively unreviewable on appeal from the final judgment." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995).

6

Pretrial orders denying qualified immunity can meet these conditions. *Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014). But an order denying a defense of qualified immunity is not collateral, or "final," when that defense's resolution depends on disputed issues of material fact. *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006). There are no such disputes here. Though the parties disagree how fast Perez crossed the street and what happened once he did, those disagreements are immaterial to the narrow initial-seizure issue before us. Perez maintains that the qualified immunity analysis requires "evaluating [Cuneo's] credibility" as a witness. Perez Br. 8. Not so. Qualified immunity involves an official's "objective legal reasonableness," not his credibility. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (cleaned up). And the District Court rejected qualified immunity for the unlawful seizure claim on a legal, not factual, ground.

Because no factual dispute precludes interlocutory appeal of the order denying summary judgment to Cuneo for qualified immunity on the unlawful seizure claim, we exercise jurisdiction and proceed to the merits.

III

The parties dispute the lawfulness of the alleged seizure comprising the initial stop and interactions between Cuneo and Perez. As we shall explain, no seizure occurred at that time.

Fourth Amendment doctrine contemplates three categories of interaction between officers like Cuneo and citizens like Perez. First, exchanges "involving no coercion or detention." *United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014). Second, "brief seizures or investigatory detentions." *Id.* Third, "full-scale arrests." *Id.* The first category is not a

7

"seizure" at all, so it doesn't implicate the Fourth Amendment. The second requires a showing that the officer acted with reasonable suspicion. *Id.* The third demands proof of probable cause. *Id.*

It is clear, and the parties agree, that nothing in the interaction before Cuneo's first mention of the DNA warrant involved coercion or detention. So the initial "chit chat," App. 75, doesn't implicate the Fourth Amendment, and we consider only the sequence from when Cuneo invoked the DNA warrant to when Perez turned and left.

Though Cuneo intended to arrest Perez, he failed to do so, and the initial sequence did not involve a seizure. A seizure occurs when an officer, "by means of physical force or show of authority," restrains the citizen's liberty. *Brown*, 765 F.3d at 288 (cleaned up). Perez does not argue that Cuneo touched or otherwise applied physical force to him while they spoke. Perez, then, was seized only if he "submi[tted] to" Cuneo's "assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (cleaned up). Yet he did not submit. By promptly disengaging from the conversation and "jog[ging]" across the street, App. 197, Perez refused to abide Cuneo's command. *See United States v. Lowe*, 791 F.3d 424, 433 (3d Cir. 2015). He exemplified the "most obvious example" of a refusal to submit: "when a suspect runs." *Id.* It matters not whether Perez was sprinting or jogging: "headlong flight" isn't required if a would-be detainee "takes action to evade" the officer—as Perez did. *Id.* We therefore hold that Cuneo's show of authority during the initial stop and interactions was merely an *attempted* seizure, which does not implicate the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 254 (2007).

8

\*　　\*　　\*

Officer Cuneo did not seize Perez during their initial encounter. So the District Court erred in denying Cuneo qualified immunity as to the unlawful seizure claim. We will reverse the order in that regard and remand the matter so Perez's excessive force claim for Cuneo's use of his firearm can proceed consistent with this opinion.