**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2788
_____

ADA ANGLEMEYER; RICHARD C. ANGLEMEYER;
JEFFREY ANGLEMEYER; JOSEPH KLUSKA,
                                                        Appellants

v.

CRAIG AMMONS; BRIAN ATKINSON; NATHAN
AUKAMP; MARK A. BENSON; DAVID BRODEUR;
JOHN P. CHULOCK; PETER DEL GAIZO; BRIAN L.
KING; MICHAEL D. LANG; VINCENTE LOPEZ;
ROBERT W. MCGARVEY; TERRANE W. MERANTE;
CLINTON C. PAINTER; JASON PELOTTE; MATTHEW J.
PIEROTTI; LANCE SCHIMP; KEVIN WARD; DANIEL
WILK; MATTHEW WYSOCKY; JOHN DOE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:19-cv-03714)
District Judge: Honorable John M. Younge
_____

Argued: September 12, 2023
_____

Before: JORDAN, BIBAS, and PORTER
*Circuit Judges*.

(Filed: February 7, 2024)
_____

Caleb Kruckenberg **[ARGUED]**
Brian Zeiger
Levin & Zeiger, LLP
1500 JFK Blvd., Suite 620
Philadelphia, PA 19102

*Counsel for Appellants.*

Claudia M. Tesoro **[ARGUED]**
Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103

*Counsel for Appellee*.
_____

OPINION OF THE COURT
_____

**PORTER**, *Circuit Judge*.

Policing can be rough business. But the Constitution requires police to use reasonable restraint, even when force may be necessary. Here, four family members who were not suspected of any wrongdoing suffered injuries at the hands of certain officers executing a pre-dawn, no-knock raid. The

injured family members sued the officers for excessive use of force. The District Court determined the officers were entitled to qualified immunity. We will reverse.

# I

Richard and Ada Anglemeyer live in Bangor Township, Pennsylvania, with several family members, including their two sons—Jeffrey and Mark Anglemeyer—and their son-in-law, Joseph Kluska. At about 6:00 a.m. on February 23, 2018, forty-three officers with the Special Emergency Response Team (SERT) of the Pennsylvania State Police took positions outside of the Anglemeyer home and prepared to execute a no-knock search warrant. They were acting on information that Mark allegedly engaged in multiple sales of methamphetamine in a workshop near the family home. No other members of the Anglemeyer family were suspected of wrongdoing. The SERT officers were informed that some members of the Anglemeyer family may own firearms. They were also informed that Mark was a white male and 52 years old.

Shortly after arriving, one of the officers noticed Richard looking out his window and radioed the other SERT members that the team's secrecy was compromised. The officers then rushed into the family home. Their faces were partially obscured, and they wore helmets but not nameplates or badge numbers. The four plaintiffs in this case—Ada, Richard, Jeffrey, and Joseph—each provide their own account of the events that followed and the injuries that they allegedly suffered.

Ada was 76 years old at the time of the incident. She awoke in her first-floor bedroom after hearing a loud noise as

3

the SERT team forcibly entered her home. As she took a step outside of her bedroom wearing her night clothes, Officer Clinton Painter struck her in the face with his shield, causing her to fly backwards on her back. The blow broke multiple teeth and one vertebra, which required long-term treatment. Ada testified that the SERT officers did not announce themselves and that she did not hear Officer Painter give instructions or warnings before striking her.

Richard was 77 years old at the time of the incident. He slept on the couch that night in the living room. Waking from the sound of his dog growling, Richard went to the window where he saw flashing lights. He assumed that it was the fire department and thought the house might be on fire. As he moved toward the door to investigate, SERT officers burst through and stormed inside. An officer whom Richard later identified as Officer Mark Benson approached and shined a flashlight into his eyes. Officer Benson then struck Richard in the head with the flashlight, grabbed his neck, and forced him to the ground. The fall caused Richard to hit his head on the fireplace, rendering him briefly unconscious. Richard suffered multiple contusions and facial abrasions and tore the menisci in his right knee, requiring surgery.

Jeffrey was 55 years old at the time of the incident. He was asleep in the living room near his father when he awoke to loud noise and bright lights. Thinking there was a fire, Jeffrey walked into the kitchen and was met by Officer Robert McGarvey, who shouted at Jeffrey to get down. Before Jeffrey could comply, Officer McGarvey clothes-lined him and forced him to the ground. An officer, whose identity is in dispute, then placed his boot on the back of Jeffrey's neck, zip-tied him, pulled him up by the zip-ties, and sat him in a chair. Jeffery

witnessed the attacks on his mother and father and demanded that someone call for an ambulance. The same officer who zip-tied Jeffrey slapped him across the jaw and repeatedly punched him. Jeffrey's testimony suggests that Officer McGarvey zip-tied and punched him, while a police report suggests that it was Officer Vicente Lopez. Jeffrey suffered sprains to his shoulder and other lasting injuries.

Joseph was 45 years old at the time of the incident. He was asleep in an upstairs bedroom when SERT officers burst into his room. Officer Matthew Wysocky jumped onto Joseph's bed and zip-tied him. Though Joseph was cooperative, Officer Wysocky lifted him up and slammed him on the floor. Joseph suffered tears in both rotator cuffs, requiring surgery.

After subduing the occupants, the SERT team searched the property. They did not discover methamphetamine, and Mark Anglemeyer was never convicted of any crime resulting from the search.

Ada, Richard, Jeffrey, and Joseph sued several officers who participated in the raid, alleging that they used excessive force in violation of the Fourth Amendment. The District Court concluded that the SERT officers were entitled to qualified immunity and granted summary judgment. It found that, under the facts presented for Ada, Jeffrey, and Joseph, the officers did not engage in objectively unreasonable conduct sufficient to constitute a claim for unconstitutional use of excessive force. It further found that Richard's and Jeffrey's claims for excessive force fail because they could not identify with sufficient particularity the officer or officers who allegedly

5

injured them. In reaching its holding, the District Court predominantly credited the officers' version of events.

Plaintiffs appealed the District Court's decision as it relates to their claims against Officers Benson, Painter, McGarvey, Lopez, and Wysocky.

## II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment. *Jefferson v. Lias*, 21 F.4th 74, 77 n.1 (3d Cir. 2021). "Similarly, we review de novo the legal grounds underpinning a claim of qualified immunity." *Mack v. Yost*, 63 F.4th 211, 227 n.14 (3d Cir. 2023) (internal quotation marks and quoted source omitted). "Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and quoted source omitted). "We view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Id.* (internal quotation marks and quoted source omitted).

## III

We use a two-pronged analysis to evaluate qualified immunity claims. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). "First, [we] must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a

constitutional right.' And second, [we] must determine 'whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The officers bear the burden of persuasion under each prong. *Mack*, 63 F.4th at 227.

**A**

The right to be free from the use of excessive force has been recognized under the Fourth Amendment, which guarantees the right of citizens "to be secure in their persons . . . against unreasonable . . . seizures." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Jefferson*, 21 F.4th at 78.

The question in excessive force cases is whether, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (internal quotation marks and quoted source omitted). We analyze this question "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. And we make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

In assessing the officers' reasonableness, we consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. We also consider "the physical injury to the plaintiff, the possibility that

the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (internal quotation marks and quoted source omitted).

Here, the District Court failed to construe the evidence in favor of each plaintiff. Instead, the District Court predominantly credited the officers' version of events. But when viewing the evidence in the non-movants' favor, as we must at this stage of the case, a reasonable jury could find that the officer or officers who harmed each plaintiff used objectively unreasonable force.

### 1. Ada Anglemeyer

There is no dispute that Officer Painter struck Ada with his shield after she stepped outside of her bedroom in her nightgown. Giving weight to Ada's testimony, Officer Painter could not reasonably believe that Ada posed an immediate threat to his or his fellow officers' safety, particularly in light of Ada's age and stature. Additionally, the Anglemeyers owned guns. But a jury could find that Officer Painter should have known that Ada—confused and dressed only in a nightgown—was not armed. Officer Painter also knew prior to entering the Anglemeyer home that Mark Anglemeyer lived with his elderly parents and other family members, who were not suspected of any wrongdoing. And he could not reasonably

confuse Ada with Mark, who Officer Painter knew was a white male and 52 years old.

A reasonable factfinder could also conclude that Officer Painter failed to give prior instructions or warnings before striking Ada, affording her no opportunity to comply. Although Officer Painter contends that Ada failed to cooperate with his commands, her testimony refutes that allegation. And we must weigh the facts in Ada's favor. *Mack*, 63 F.4th at 227 n.14. Viewing these facts in the totality, a jury could find that there was no need for *any* force against Ada, making Officer Painter's conduct toward Ada objectively unreasonable. *See Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (finding unconstitutional excessive force where officers tackled plaintiff in his own home, even though plaintiff was unarmed, cooperative, and not resisting arrest or attempting to flee); *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195-96 (3d Cir. 2021) (finding that the officer used unconstitutional excessive force in striking an unarmed, compliant, and non-threatening individual).

## 2. Richard Anglemeyer

As a preliminary matter, the parties dispute which officer allegedly hit Richard in the head with a flashlight, strangled him to the ground, and caused him serious injury. Through process of elimination, Richard concludes that it must have been Officer Benson, while the officers contend that Richard failed to successfully zero in on one defendant because other officers were also in the vicinity. The District Court agreed with the officers and found that Richard failed "to present evidence establishing the personal involvement of the defendant." (App. Vol. I 21-22.)

9

We disagree. Officer McGarvey testified that he took down a male in the kitchen who was "not [a] senior citizen," which thus rules out Richard. (App. Vol. II 164.) Officer Lance Schimp confirmed in his police report that while Officer McGarvey handled the male in the kitchen, Officer Benson was "dealing with another male" in the next room on the ground floor. (App. Vol. II 221.) That room could only be the living room, where Richard was attacked. So Richard has brought forth sufficient evidence implicating Officer Benson as the officer who engaged with him. *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018) ("[A] plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial.").

A reasonable factfinder could also conclude that Officer Benson's force was objectively unreasonable. Based on Richard's testimony, he was plainly unarmed and cooperative, following Officer Benson's flashlight with his eyes before Officer Benson gratuitously struck him. And Officer Benson could not reasonably confuse Richard with Mark, who Officer Benson knew was 52 years old. Like Ada's case, a jury could find that no force was necessary against Richard—let alone force of the degree exercised, particularly against a non-threatening and elderly individual. *See Couden*, 446 F.3d at 497; *Jacobs*, 8 F.4th at 195-96.

### 3. Jeffrey Anglemeyer

The parties dispute the identity of the officer or officers who attacked Jeffrey. While the record clearly shows that Officer McGarvey was the officer who initially took down

Jeffrey in the kitchen, they offer competing evidence as to who subsequently zip-tied him and struck him in the face. Based on the evidence in the record, a reasonable jury could conclude that, after Officer McGarvey struck Jeffrey with his shield, Officer Lopez zip-tied Jeffrey's wrists, sat him up in a chair, and punched him. Though Jeffrey's testimony implicates Officer McGarvey in those acts, Officer Lopez's police report states that he zip-tied a man who matched Jeffrey's description. And Jeffrey later claimed that the same person who zip-tied him also punched him. At this stage in the case, that is enough to proceed to trial against Officer Lopez. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (stating that, even though the plaintiff was not sure who participated in the beating, competing evidence as to the identity of the officers was "a classic factual dispute to be resolved by the fact finder").[1]

---

[1] The officers argue—and the District Court held—that our decision in *Jutrowski* necessitates dismissing Jeffrey's action against Officer Lopez because Jeffery focused on several "possible wrongdoers" instead of homing in on one defendant (Appellee's Br. at 29, citing *Jutrowski*, 904 F.3d at 280). But *Jutrowski* held that the plaintiff could not proceed against multiple officers because he failed to provide "*any* ascertainment" of who engaged in excessive force. *Jutrowski*, 904 F.3d at 292 (internal quotation marks and quoted source omitted) (emphasis added). We thus concluded that the "record [was] insufficient for any reasonable jury to identify which, if any, of the [i]ndividual [d]efendants used excessive force." *Id.* at 292-93 (footnote omitted). But here, Jeffrey *has* offered evidence implicating Officer Lopez—most persuasively Officer Lopez's own police report suggesting he zip-tied

Weighing the evidence in favor of Jeffrey, a reasonable jury also could conclude that the officers' force was objectively unreasonable. Like his mother and father, Jeffrey was unarmed and not suspected of any wrongdoing. Jeffrey also had no time to comply with Officer McGarvey's command to get down before Officer McGarvey struck him with his shield. Once Jeffrey was zip-tied, the officers could not have reasonably believed that Jeffrey posed any threat, and there is no indication that he was resisting the officers' restraints. So a jury could find that an officer stepping on Jeffrey's neck, yanking him up by his zip-ties instead of aiding him to his feet, and punching him—all while Jeffery was bound and defenseless—rises to objectively unreasonably conduct. *See Couden*, 446 F.3d at 497; *Jacobs*, 8 F.4th at 195-96; *Smith*, 293 F.3d at 649 ("Punching and kicking someone who is handcuffed behind his back and under the control of [officers] . . . is 'repugnant to the conscience of mankind.'") (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)).

### 4. Joseph Kluska

Finally, giving weight to Joseph's testimony, a reasonable jury could conclude that Officer Wysocky engaged in objectively unreasonable conduct when he picked up Joseph by his zip-tied arms and dropped him to the floor, tearing both

---

Jeffrey—sufficient for a reasonable jury to conclude Officer Lopez ultimately punched him. While Officer Lopez's alleged conduct may not ultimately be proven, the very fact that this material evidence is disputed necessitates reserving this question for the jury.

of his rotator cuffs. Though Officer Wysocky saw a handgun lying on the back of Joseph's bed, Officer Wysocky harmed Joseph after he was fully secured, cooperative, and not at risk of flight. As we have previously explained, "striking a physically restrained and nonthreatening" person is "nowhere near the hazy border between excessive and acceptable force." *Jacobs*, 8 F.4th at 197 (internal quotation marks and quoted source omitted).

**B**

Because the officers have failed on the first prong of the qualified immunity analysis, they are entitled to summary judgment only "if they can bear the burden of showing, on the second prong, that reasonable officers could not have known that their actions violated clearly established law."[2] *Mack*, 63 F.4th at 228. We must proceed by defining the right allegedly violated with a "high degree of specificity" and then asking "whether that right was clearly established at the time of its

_____

[2] The District Court at times conflates both prongs of the qualified immunity analysis. (*See* App. Vol. I 14-15, 17.) However, like the parties, we understand the District Court's opinion to resolve only the first prong of the qualified immunity analysis. Because we resolve the first prong in favor of Plaintiffs, we exercise our discretion to also address the second prong. *See Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998) (stating that it is "generally appropriate" for us to reach an issue that the district court did not if "the issues provide purely legal questions, upon which an appellate court exercises plenary review").

alleged violation." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and quoted source omitted); *Mack*, 63 F.4th at 228.

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Jacobs*, 8 F.4th at 196 (quoting *Wesby*, U.S. at 63). "In each case, we must focus on 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "Thus, the central question is whether the existing law gave the officer 'fair warning' that his *particular* conduct was unlawful." *Id.* (citing *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011)).

"[E]xisting precedent . . . [must] place[] the statutory or constitutional question beyond debate." *Dennis v. City of Philadelphia*, 19 F.4th 279, 288 (3d Cir. 2021) (internal quotation marks and quoted source omitted). Thus, the "specificity of caselaw [is] 'especially important.'" *Jacobs*, 8 F.4th at 196 (quoting *Mullenix*, 577 U.S. at 12). While "we do not require that the prior precedent have indistinguishable facts," *Dennis*, 19 F.4th at 288, "[c]ases with closely analogous facts can . . . help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Jacobs*, 8 F.4th at 196 (internal quotation marks and quoted source omitted).

Here, all four plaintiffs had the right to be free from serious bodily harm as individuals who were plainly unarmed, substantially outnumbered by law enforcement, cooperative, not suspected of wrongdoing, and in their own home. Our prior

14

decision in *Couden*—a "closely analogous" case to the facts before us here—shows that Plaintiffs' rights were clearly established.

In *Couden*, the Delaware Joint Violent Crime Task Force, after receiving a tip that a fugitive wanted for drug charges might be staying at a certain address, conducted a stakeout in a Delaware neighborhood. 446 F.3d at 489. Two houses down from the surveilled address, Pamela Couden and some of her children, including 14-year-old Adam, drove up to their home in the family car. *Id.* Adam exited the car and entered his home. *Id.* Presumably thinking Adam was the wanted fugitive simply entering a different home, the police attacked Pamela's car, causing her to drive off to call 9-1-1. *Id.* at 490. At least four officers then stormed inside the house, grabbed Adam inside his home, and threw him to floor. *Id.* While one officer pressed his knee into Adam's back, they pushed Adam's head into the ground, pointed guns at him, and sprayed him with mace. *Id.* at 490, 497.

We held that it was clearly established that it was unlawful for the officers to engage in this level of force when the individual posed no "potential threat" to the officers, was substantially outnumbered by officers in his own home, and was not "resisting arrest, armed, or attempting to flee." *Id.* at 497. We determined that, at the very most, officers under this set of facts would be entitled to only "the use of low level force." *Id.* Our sister circuits have denied qualified immunity in cases factually similar to *Couden*. *See, e.g.*, *Shannon v. Koehler*, 616 F.3d 855, 864-65 (8th Cir. 2010) (holding it was clearly established that it is unlawful for an officer to engage in serious bodily harm when the individual posed no danger to the officer and did not resist or attempt to flee); *Darden v. City*

15

*of Fort Worth*, 880 F.3d 722, 733 (5th Cir. 2018) (holding that the officer's conduct would violate clearly established rights if he used violent force, such as slamming or striking, against a plaintiff who did not resist or presented no safety threats).

Here, the officers' force against all four plaintiffs was even more egregious than the force exercised in *Couden*. The plaintiffs were not only plainly unarmed, substantially outnumbered, cooperative, and in their own home, but they were not suspected of any wrongdoing or facing arrest. Accordingly, any reasonable officer in our case would have known that the officers' force was unlawful under this set of facts.

\* \* \*

Construing the evidence in the light most favorable to each plaintiff, a reasonable jury could find that the officer who harmed each plaintiff used objectively unreasonable force. At the time of the officers' conduct, it was clearly established that it was unlawful for the officers to inflict serious bodily harm on individuals who were plainly unarmed, substantially outnumbered by law enforcement, cooperative, not suspected of wrongdoing, and in their own home. We will therefore reverse the District Court's order granting summary judgment to the officers.