PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1866
_____

PAUL MONTEMURO

v.

JIM THORPE AREA SCHOOL DISTRICT;
GLENN CONFER, individually and as School Board
Member; DENNIS MCGINLEY, individually and as School
Board Member; RANIERO MARCIANTE, individually and
as School Board Member;
PEARL DOWNS-SHECKLER individually and as School
Board Member; GERALD STRUBINGER, individually and
as School Board Member,
                                      Appellants
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 3-20-cv-00208)
District Judge:  Honorable Robert D. Mariani
_____

Argued
January 18, 2024

Before:   JORDAN, BIBAS, and AMBRO, *Circuit Judges*

(Filed: May 1, 2024)
_____

David W. Brown
Michael I. Levin   [ARGUED]
Levin Legal Group
1800 Byberry Road
1301 Masons Mill Business Park
Huntingdon Valley, PA   19006
       *Counsel for Appellants*

William E. Vinsko, Jr.   [ARGUED]
37 N. River Street
Wilkes-Barre, PA   18702
       *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Paul Montemuro was elected President of the Jim Thorpe Area School Board (the "School Board" or "Board"). But then, a week later, the Board elected someone else. Montemuro received no notice of the change beforehand, so he sued the Board members who voted to oust him, along with the Jim Thorpe Area School District (the "District") for depriving him of property without due process, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.  The defendant Board members and District (collectively, the "Defendants") asserted

2

qualified immunity, but the District Court held that Montemuro had a clearly established property right in his employment and had been deprived of that right without due process. Because Pennsylvania law clearly establishes that Montemuro had a property interest in his job as the Board President, and because we must accept as true his allegation that he was removed from office without notice, we will affirm.

## I. BACKGROUND

The Jim Thorpe Area School District is located in Carbon County, Pennsylvania. Paul Montemuro served with Glenn Confer, Dennis McGinley, Pearl Downs-Sheckler, Raniero Marciante, and Gerald Strubinger as members of the School Board. On December 4, 2019, a majority of the Board elected Montemuro to be President of the Board. For reasons not apparent on the record, a week later, the Board elected a new president. Montemuro claims that the Board did not notify him of its plan to reorganize, nor did it provide him a hearing before his ouster. He responded by suing the District and the Board members who voted against him for depriving him of his property interest in the position of Board President without due process and in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. He raised other federal and state claims, none of which are relevant at this point.

The Defendants moved to dismiss, asserting, among other things, qualified immunity as an affirmative defense. A Magistrate Judge recommended that the District Court deny the motion to dismiss for qualified immunity because Montemuro had a "clearly established" property right and was fired without due process. (J.A. at 26.) The Court adopted the Magistrate Judge's report and recommendation and denied the

3

motion to dismiss for qualified immunity. The Defendants filed the interlocutory appeal on the qualified immunity question that is before us now.

## II. DISCUSSION[1]

Qualified immunity "shields governmental officials from suit and from liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mack v. Yost*, 63 F.4th 211, 221 (3d Cir. 2023) (quoting *Peroza-Benitez v. Smith*, 994 F.3d 157, 164-65 (3d Cir. 2021)). Only the defendant Board members are eligible for qualified immunity;

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. The Magistrate Judge had jurisdiction under 28 U.S.C. § 636(c)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291 and the collateral-order doctrine because the parties do not dispute the facts underlying the qualified immunity defense. *Perez v. Borough of Johnsonburg*, 74 F.4th 129, 133 (3d Cir. 2023). Montemuro emphasizes that the parties dispute whether the law underlying his property right was "clearly established." (Answering Br. at 2.) That, however, is a legal question. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("Whether an asserted federal right was clearly established at a particular time … presents a question of law[.]"). We review de novo "a district court's denial of a motion to dismiss on qualified immunity grounds as it involves a pure question of law." *Dennis v. City of Philadelphia*, 19 F.4th 279, 284 (3d Cir. 2021). At the motion to dismiss stage, "we must accept [the plaintiff's] allegations as true and draw all inferences in his favor." *Id.*

4

the District is not. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) (noting that a municipal entity is not eligible for qualified immunity). There is a well-settled two-part test to determine whether government officials should receive qualified immunity. *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024). We ask whether the plaintiff has alleged the violation of any constitutional or statutory rights, and we further ask whether those rights were clearly established at the time of the challenged conduct, such that a reasonable official would have known that the conduct violated the plaintiff's rights. *Id.* We are free to address those questions in the order we choose. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## A. The Board violated Montemuro's constitutional right to due process.

The Fourteenth Amendment provides, in part: "No State shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. Montemuro claims that he was deprived of property, his job as School Board President, without the requisite legal process. To succeed, he must demonstrate, first, that he was deprived of a property interest protected by the Fourteenth Amendment and, second, that the procedures available to him "did not provide due process of law." *Thompson v. Delaware Dep't of Servs. for Child., Youth & Their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022).

### 1. Montemuro had a property interest in his job as School Board President.

A state employee has a constitutionally protected property interest in his job if he can only be terminated for

5

cause. *Id.* We look to "state law and rules" to determine whether an employee can be fired only for cause, *id.*, and, in this instance, an answer is there: Pennsylvania law establishes that a school board president can be fired only for cause. The Pennsylvania Constitution, in § 7 of Article VI, declares, "[a]ll civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime." It goes on to say that "[a]ppointed civil officers … may be removed at the pleasure of the power by which they shall have been appointed." *Id.* In a case from the mid-twentieth century, *Buell v. Union Township School District*, the Supreme Court of Pennsylvania applied the text of § 7 and determined that school officials (in that case, a school district secretary and treasurer) are appointed civil officers. 150 A.2d 852, 854-55 (Pa. 1959). Further, the Court concluded that such civil officers "could be removed at the pleasure of the body which appointed [them]." *Id.* at 855. The Defendants lay heavy emphasis on that latter point to argue that Montemuro was terminable at will and so had no property interest in his position. But they ignore how the Pennsylvania Supreme Court has since interpreted the entirety of § 7.

In a 2007 case, *Burger v. School Board of McGuffey School District*, the Pennsylvania Supreme Court recognized the superintendent of a school board as a "civil officer" under Article VI, § 7 of the Commonwealth's constitution but then determined that he was not removable at will. 923 A.2d 1155, 1157, 1163 (Pa. 2007). It began by summarizing the trial court's analysis, saying, "[t]he trial court found that the constitutional grant of authority conferred upon the appointing power to remove an appointed civil officer … is absolute, thereby permitting no limitations on that authority." *Id.* at

6

1161-62. The Supreme Court then made clear its disagreement with the trial court – and, indeed, with *Buell* – by rejecting the idea that § 7 creates an at-will removal power over all appointed civil officers. The Court looked to the first sentence of that section and said, "[t]he provision that such civil officers shall hold their offices on the condition that they 'behave themselves well while in office,' and that they shall (not may) be removed 'on conviction of misbehavior in office or of any infamous crime' contemplates an affirmative limitation (good behavior) upon removal." *Id.* at 1162. Hence, the Court concluded, such officers are not removable at will. *Id.* ("We therefore hold that, as a matter of plain meaning, the Constitution does not vest in the appointing power unfettered discretion to remove. Instead, valid removal depends upon the officer behaving in a manner not befitting the trust placed in him by the appointing authority.") The upshot is that Montemuro, as Board President, while being an "[a]ppointed civil officer" under Article VI, § 7, *see Buell*, 150 A.2d at 854, was not subject to at-will removal but only to removal for cause. He thus had a property interest in the Board Presidency.

Pennsylvania statutes further support that Montemuro had a property interest in his position. Section 5-514 of the Public School Code states:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employe[e]s, or appointees *for incompetency, intemperance, neglect of duty, violation of any of*

7

*the school laws of this Commonwealth, or other improper conduct.*

24 Pa. Stat. Ann. § 5-514 (emphasis added). And the school board president is an "officer" of the school board, as is evident from § 4-404 of the Public School Code, which creates the office and is entitled "election of officers."[2] *See Buell*, 150 A.2d at 854 (assuming school secretary and treasurer qualify as "officers" under § 5-514). Thus, by its terms, § 5-514 provides that school district officers can only be fired for cause.

The analysis, however, is complicated by *Buell*, which held § 5-514 unconstitutional "[t]o the extent that [it] is in conflict with … the Constitution[.]" 150 A.2d at 855. The *Buell* court followed much the same logic pressed by the Defendants here, namely that the constitutional provision just discussed allows a civil officer to be terminated without cause. But once again *Burger* comes to Montemuro's rescue. *Burger*

---

[2] A Commonwealth statute directs that "[t]he title and preamble of a statute may be considered in the construction thereof . . . [and] headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." 1 Pa. Cons. Stat. § 1924. The Public School Code provides that, for certain districts, including Jim Thorpe, "the school directors shall effect a permanent organization by electing, during the first week of December, from their members, a president and vice-president, each to serve for one year[.]" 24 Pa. Stat. Ann. § 4-404. The parties do not dispute that Jim Thorpe is governed by § 4-404 based on its population size. *See* 24 Pa. Stat. Ann. § 2-202.

rejected that reasoning. It held instead that the legislature could "place conditions or limitations on the appointing power's authority … [s]o long as the statutory limitations concern matters bearing on the officers' 'behaving themselves well while in office[.]'" *Id.* at 1163. Accordingly, the statute at issue in that case – which allowed a school board to fire a school superintendent only for misbehavior and after a hearing – was constitutional. *Id.*; *see* 24 Pa. Cons. Stat. § 10-1080.

The District Court here rightly applied that same logic in assessing the validity of § 5-514. That section limits the firing of school board officers to circumstances involving "incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct[,]" all of which are matters "bearing on the officers' 'behaving themselves well while in office[.]'"[3] *Burger*, 923

---

[3] In their opening brief, Defendants argue that a school board president is unpaid and has little power, implying there can be no property interest in the position. They do not cite any case or explain why that ought to change the analysis. Thus, the issue is forfeited. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing."). Even if we were inclined to take up their undeveloped argument, it is not obvious that they would prevail. At the District Court, they cited *Versarge v. Township of Clinton*, which held that a volunteer firefighter did not have a property interest in the de minimis benefits he received from his position. 984 F.2d 1359, 1370 (3d Cir. 1993). But, unlike school board presidents in Pennsylvania, volunteer firefighters do not have a "substantive" state-granted right to their jobs, or

9

A.2d at 1163. Thus, as instructed in *Burger*, § 5-514 is constitutional. *See id.*; *see also Knox v. Bd. of Sch. Dirs. of Susquenita Sch. Dist.*, 888 A.2d 640, 648 (Pa. 2005) ("Section 5-514 offer[s] a measure of job protection to school 'officers, employees, [and] appointees,' setting forth the grounds for removal and the right to notice and a hearing."); *cf. Coleman v. Bd. of Ed. of Sch. Dist. of Phila.*, 383 A.2d 1275, 1280 (Pa. 1978) (holding that § 5-514 "established a clear legal right to reinstatement" for public school employee who was fired without a hearing). That, in turn, means that Montemuro had a protectible property interest in his job as School Board President because, under § 5-514, he could only be fired for cause.[4]

---

at least we have not received any authority or evidence indicating that they do. *See Thornton v. Barnes*, 890 F.2d 1380, 1388 n.9 (7th Cir. 1989) ("[T]he totality of circumstances surrounding that grant of tenure makes it clear that, despite the lack of remuneration, state law gives the incumbents the right to remain in office. Thus, our analysis is grounded on the 'substance' of the plaintiffs' rights, which is found in state law.").

[4] For the first time at oral argument, Defendants argued that elected public officials do not have a protectible property interest in their jobs. Leaving aside that Montemuro was not elected by the public but by his fellow Board members, the Defendants' late-breaking argument was not raised in any briefing and, consequently, is forfeited. *See Barna*, 877 F.3d at 146 (we do not reach an appellant's theory "raised for the first time … at oral argument").

10

*2.      Montemuro was not afforded due process.*

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  The United States Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).  "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)).

At this stage in the proceedings, we accept as true all factual allegations of the complaint.  *Thompson*, 44 F.4th at 194.  Montemuro claims he was not provided due notice or a hearing before the Board elected another president a week after his own election.  So, the first qualified immunity prong is satisfied:  Montemuro has adequately alleged that the Board violated his property right by removing him from office without a hearing.

**B.      Montemuro's right was clearly established.**

A right is clearly established if the case law at the time of the alleged violation of the right would have put government officials on fair notice that their conduct violated the plaintiff's rights. *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d

11

416, 426 (3d Cir. 2020). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The extant case law must be derived from established Supreme Court and Third Circuit precedent, *Jefferson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021), or "state law and rules" and their interpretation by the highest court in that state when determining the contours of a state-granted right, *Thompson*, 44 F.4th at 194; *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001) (looking to a Pennsylvania statute to determine whether a pet dog is property protected by the Fourth Amendment); *cf. Singh v. Att'y Gen.*, 839 F.3d 273, 284 n.5 (3d Cir. 2016) ("[I]n matters of state substantive law, we look to how the highest court of that state – here, the Supreme Court of Pennsylvania – would decide the relevant legal issues." (internal quotation marks omitted)).

Three propositions are controlling here: first, employees who can only be removed for cause have a property interest in their employment; second, school board presidents in Pennsylvania can only be dismissed for cause; and third, employees with a property interest in their employment cannot be fired without notice and a hearing. We believe that, under existing precedent, all three were indeed clearly established.

The first point may be the easiest. Supreme Court and Third Circuit precedent clearly establish that a public employee has a property interest in his job if he can only be terminated for cause. *Loudermill,* 470 U.S. at 538 (civil service employees "possessed property rights in continued employment" because they could not be dismissed except for cause); *Dee v. Borough of Dunmore*, 549 F.3d 225, 230-31 (3rd Cir. 2008) (fireman had property interest in employment

12

because he could not be fired without cause); *Smith v. Borough of Dunmore*, 633 F.3d 176, 180 (3d Cir. 2011) (same); *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (same for state capitol police officer); *Mancini v. Northampton Cnty.*, 836 F.3d 308, 315 (3d Cir. 2016) (career service employee "had a protected property interest in her job" because she could only be fired for cause).

Turning to the second point, we look to "state law and rules" to determine whether a particular classification of employee can be fired only for cause. *Thompson*, 44 F.4th at 194. Pennsylvania law clearly establishes that school board presidents can be fired only for cause. Pa. Const. art. VI, § 7 (appointed civil officers can only be fired for cause); 24 Pa. Stat. Ann. § 5-514 (school board officers can only be fired for cause); *Burger*, 923 A.2d at 1162-63 (laws limiting removal of public employees to circumstances involving bad behavior do not violate Article VI, § 7, of the Pennsylvania Constitution). The Defendants argue that the two Pennsylvania Supreme Court cases we have just discussed, *Buell*, 150 A.2d 852, and *Burger*, 923 A.2d 1155, are in conflict, so Montemuro's property right was still up for debate and not clearly established. Not so – *Burger* settled the matter. It explicitly addresses *Buell* and cabins it to its facts. *Burger*, 923 A.2d at 1164 n.10 (explaining that *Buell* was limited to treasurers and secretaries, and if not, that *Burger* was based upon different precedent). In fact, *Burger*'s dissent relies upon *Buell* to argue that the provision in question was unconstitutional, *id.* at 1168 (Eakin, J., dissenting), so the *Burger* majority plainly did not consider *Buell* to have the weight the Defendants think it has. *Burger* is the controlling precedent, and it is quite plain in its holding.

13

Finally, it is clearly established that employees with a statutory right in their employment cannot be fired without notice and a hearing. *Loudermill*, 470 U.S. at 542. For all of those reasons, a reasonable school board member would have known that ousting Montemuro without notice or a hearing would violate his right to due process. So, the Board does not receive qualified immunity.

## C. We may consider § 5-514 even though Montemuro did not brief it on appeal.

We have relied here on § 5-514 of Pennsylvania's Public School Code, even though Montemuro did not mention it on appeal. A word of explanation is therefore in order. While he did not direct us to § 5-514 in his briefing, which would have been helpful, Montemuro did raise and rely on it before the District Court, and that Court in turn relied upon it in its decision. "[W]e may affirm on any ground supported by the record as long as the appellee did not *waive* – as opposed to *forfeit* – the issue." *TD Bank N.A. v. Hill*, 928 F.3d 259, 276 n.9 (3d Cir. 2019).

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Montemuro did not waive reliance on § 5-514. He briefed it at the District Court and urged us to follow it in a post-argument

14

letter. But he did technically forfeit any argument from it by failing to mention it in his answering brief.[5]

That, however, does not mean we cannot consider it on this record. On appeal, forfeiture has greater consequences for appellants than for appellees. *Cf. Eichorn v. AT&T Corp.*, 484 F.3d 644, 657-58 (3d Cir. 2007) (holding that on remand, appellees, but not appellants, can raise issues they did not raise during the first appeal). And that makes good sense. An appellant challenges the district court's judgment, so he bears the burden of demonstrating the alleged error. *See* Fed. R. App. P. 28(a)(8) (appellant's opening brief must set forth and address each argument the appellant wishes to pursue in an appeal). Thus, "the appellant normally has abandoned" an unraised issue "on appeal[,] and it need not be addressed by the court of appeals." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). But "the appellee is only interested in maintaining the status quo, *i.e.*, an affirmance." *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995).

So, an appellee is not strictly required to file a brief. By failing to do so, the appellee loses the right to oral argument, unless the court grants permission. *See* Fed. R. App. P. 31(c);

---

[5] While we generally will only reach forfeited issues in civil cases in "exceptional circumstances," we are "less reluctant to bar consideration" of such issues when they involve a pure question of law or the district court has relied on them in its reasoning, so that there can be no "unfair surprise" to the defendants in addressing the issue. *See Barna*, 877 F.3d at 146-77.

*cf. Torisky v. Schweiker*, 446 F.3d 438, 442 (3d Cir. 2006) ("[Appellants] are entitled to pursue their appeal, however, and we are required to proceed without the benefit of an appellee's brief.").[6] But we can affirm a district court's opinion if we believe it sound, even when "an appellee fails to defend [it] adequately[.]" *Hernandez*, 69 F.3d at 1094. Failing to do so "would open the door to a perverse jurisprudence by which properly decided district court decisions could be reversed." *Id.*; *see also Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 n.2 (6th Cir. 2011) ("This court … cannot be forced to reverse the district court due merely to the appellees' failure to respond to the appellant's arguments." (cleaned up)).

Thus, because Montemuro, as appellee, raised § 5-514 before the District Court, and that statute informed the District Court's decision, we too can take account of it on appeal.

## III. CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.

---

[6] Appellees also risk conceding "any objections not obvious to the court to specific points urged by the [appellant]." *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005) (alteration in original).

16